UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEIGHANN RENEE LAMBERT,

                Plaintiff,

v.                                                3:13-CV-500
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF PETER W. HILL                PETER W. HILL, ESQ.
  Counsel for Plaintiff
P.O. Box 823
384 Main St.
Oneonta, NY 13820-0823

U.S. SOCIAL SECURITY ADMIN.           JASON P. PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

       This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  (Dkt. No. 13.)  This case has proceeded in accordance with General Order 18.

       Currently before the Court, in this Social Security action filed by Leighann Renee Lambert ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 10, 11.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born on January 13, 1982. (T. 74.) She completed high school. (T. 157.) Generally, Plaintiff's alleged disability consists of arthritis, attention deficit disorder ("ADD"), attention deficit hyperactivity disorder ("ADHD"), right shoulder impairment, dyslexia and comprehension impairment. (T. 156.) Her alleged disability onset date is September 14, 2009. (T. 74.) Her date last insured is June 30, 2012. (T. 152.) She previously worked as a cashier. (T. 157.)

### B.     Procedural History

On July 6, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 152.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 31, 2012, Plaintiff appeared before the ALJ, Thomas Grabeel. (T. 54-72.) On December 20, 2012, ALJ Grabeel issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 33-53.) On March 8, 2013, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 38-48.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2012 and Plaintiff had not engaged in substantial gainful activity since September 14, 2009. (T. 38.) Second, the ALJ found that Plaintiff had the severe impairments of right shoulder instability with recurrent dislocations requiring surgical repair, right quadriceps atrophy, axial low back pain, anxiety, and depression. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 40-42.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except Plaintiff was unable to operate foot controls. (T. 42.)[1] Further, the ALJ found Plaintiff was able to understand and execute simple instructions, maintain attention and concentration to perform simple tasks, interact appropriately with others, make normal work adaptations, and maintain attendance and a work schedule within acceptable norms. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 46-47.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues "the ALJ's selective reliance upon medical opinions was improper." (Dkt. No. 10 at 10-11 [Pl.'s Mem. of Law].) Second, Plaintiff argues "the record does not have substantial evidence to support the conclusion that Plaintiff was not credible." (*Id.* at 11-15.) Third, Plaintiff argues "the weight given to certain medical opinions by the ALJ was in error." (*Id.* at 15-16.) Fourth, and lastly, Plaintiff argues "the ALJ breached his duty to fully develop the record." (*Id.* at 17.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ did not selectively rely on the medical evidence, the ALJ properly considered the medical assessments of the record, and there was no need for the ALJ to recontact the treating physician. (Dkt. No. 11 at 5-10 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ properly evaluated the credibility of Plaintiff's subjective complaints. (*Id.* at 10-12.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard

4

to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.  ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed in a consolidated manner.

### A.  Medical Opinion Evidence Provided by Treating Physicians, Michael Freeman, D.O. and Michael Talarico, M.D.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

6

not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff received medical treatment from Drs. Freeman and Talarico and both physicians provided medical source statements in which they specified work related functional limitations based on Plaintiff's physical and mental impairments.

Plaintiff received mental health care from Dr. Talarico and other practitioners in his office. Dr. Talarico completed three medical source statements regarding Plaintiff's ability to function in a workplace given her mental health impairments.

On December 21, 2011, Dr. Talarico completed an employability assessment form for the New York State Office of Temporary and Disability Assistance. (T. 318-319.) Therein, Dr. Talarico opined Plaintiff suffered from panic disorder with agoraphobia, generalized anxiety disorder, and ADHD. (T. 318.) Dr. Talarico indicated Plaintiff was "moderately limited" in her ability to maintain attention/concentration. (T. 319.) Dr. Talarico indicated Plaintiff had "no evidence of limitations" in her abilities in

7

the following areas: understand and remember instructions, carry out instructions, make simple decision, interact appropriately with others, maintain socially appropriate behavior without exhibiting extremes, maintain basic standards of personal hygiene and grooming, and function in a work setting at a consistent pace. (*Id.*) Dr. Talarico stated Plaintiff's limitations were "physical and not mental. [Plaintiff's] anxiety and panic can be managed [with] medication." (*Id.*)

On April 27, 2012, Dr. Talarico completed another employability assessment form for the New York State Office of Temporary and Disability Assistance. (T. 316-317.) Therein, Dr. Talarico opined Plaintiff suffered from major depression and panic disorder with agoraphobia. (T. 316.) Dr. Talarico provided the same functional limitations as he did in December of 2011. (T. 317.)[2] Dr. Talarico stated "[a]t present, [Plaintiff] has a lot of difficulty even leaving her house, interacting with people – any working environment is out at this time;" however, he indicated this limitation was not permanent and would last four to six months. (*Id.*)

On November 2, 2012, Dr. Talarico signed a medical source statement. (T. 569.) The form was also signed on October 17, 2012 by Nola Macek, L.M.S.W. and it appears that Ms. Macek completed the form. (*Id.*) The statement indicated Dr. Talarico provided Plaintiff with medication, therapy, and education while Ms. Macek provided verbal therapy. (*Id.*) Dr. Talarico stated Plaintiff was "making progress in improving her mental health and could continue to do so with treatment; however, her medical

---

[2] Dr. Talarico indicated Plaintiff was "moderately limitied" in her ability to maintain attention/concentration. (T. 317.) Dr. Talarico indicated Plaintiff had "no evidence of limitations" in the following areas: understand and remember instructions, carry out instructions, make simple decision, interact appropriately with others, maintain socially appropriate behavior without exhibiting extremes, and maintain basic standards of personal hygiene and grooming. (*Id.*) However, Dr. Talarico put a question mark next to the box stating "appears able to function in a work setting at a consistent pace." (*Id.*)

8

(physical issues) complicat[ed] both her mental health and ability to work." (*Id.*)  Dr. Talarico opined that, if working a full time job, Plaintiff would be "off task" between 30% and 50% of the workday due to needed rest periods, distraction, lack of focus or "any other factors attributable" to her limitations.  (*Id.*)

In his November 2012 statement, Dr. Talarico provided an opinion regarding Plaintiff's ability to perform certain work related activities.  Dr. Talarico opined Plaintiff had a "good" ability to follow work rules, relate to co-workers, maintain personal appearance, and demonstrate reliability.  (T. 568.)[3]  Dr. Talarico opined Plaintiff had a "fair" ability to deal with the public, use judgment, interact with supervisors, deal with stress, function independently, maintain attention/concentration, behave in an emotionally stable manner, and relate predictably in social situations.  (*Id.*)[4]  Dr. Talarico concluded that Plaintiff "[had] made a lot of progress in treatment, she [took] her medication as prescribed, attend[ed] scheduled appointments and call[ed] when she [could not] make it.  Her anxiety [could] make functioning difficult but through medication [and] verbal therapy she [was] improving."  (T. 569.)

The ALJ afforded the opinion of Dr. Talarico "controlling weight."  (T. 46.)  The ALJ specifically relied on Dr. Talarico's December 2011 statement indicating Plaintiff's limitations were physical, not mental.  (T. 46.)  The ALJ also relied on Dr. Talarico's December 2011 and April 2012 statements which indicated Plaintiff's only limitation was in the area of maintaining attention/concentration and the limitation was "moderate."

---

[3]  "Good" was defined as "ability to function is satisfactory."  (T. 568.)

[4]  "Fair" was defined as "ability to function is often satisfactory, but will be unsatisfactory 25-50% of the time.  (T. 568.)

(*Id.*)  The ALJ also relied on Dr. Talarico's November 2012 notation that Plaintiff was making progress and displayed "fair to good" functioning in all areas.  (*Id.*)

Dr. Freeman completed a medical source statement on December 3, 2012.  (T. 570-573.)  Dr. Freeman treated Plaintiff for her physical impairments.  Dr. Freeman opined Plaintiff experienced pain with sufficiently severity to "frequently" interfere with attention and concentration.  (T. 570.)  Dr. Freeman opined Plaintiff could continuously use her right and left hands for simple grasping and fine manipulation.  (T. 571.)  Dr. Freeman opined Plaintiff could occasionally use her right foot and could continuously use her left foot.  (*Id.*)  Dr. Freeman opined Plaintiff could sit, stand, and walk for six hours in an eight hour work day.  (T. 572.)  Dr. Freeman opined Plaintiff could continuously lift up to ten pounds and could occasionally lift up to 50 pounds.  (*Id.*)  Dr. Freeman opined Plaintiff would be absent from work "about twice a month" as a result of her impairments or treatment.  (*Id.*)  Dr. Freeman opined Plaintiff could work 20 hours on a regular consistent basis.  (*Id.*)

Dr. Freeman's medical source statement also contained a "clinical assessment of pain" section.  (T. 573.)  Dr. Freeman indicated Plaintiff's pain was "present to such an extent as to be distracting to adequate performance of daily activities of work."  (*Id.*)  Dr. Freeman indicated Plaintiff's physical activity, such as walking, standing, and bending "greatly increases pain causing abandonment of tasks related to daily activities of work." (*Id.*)  Dr. Freeman indicated Plaintiff's medication impacted her work ability to the extent that "some limitations [were] present, but [would] not create serious work problems." (*Id.*)

The ALJ afforded Dr. Freeman's December 2012 opinion "limited probative value." (T. 45.) Specifically, the ALJ determined that the record did not support Dr. Freeman's opinion that Plaintiff could only work 20 hours in a workweek and experienced distracting pain. (T. 46.) The ALJ reasoned Dr. Freeman's limitation to 20 hours a week was inconsistent with his opinion that Plaintiff could lift and carry up to 50 pounds and engage in unlimited sitting, standing, and walking in a "competitive work situation." (*Id.*) The ALJ also reasoned Dr. Freeman's conclusion was inconsistent with clinical and diagnostic studies; such as physical examinations showing full motor strength and normal EMG results. (*Id.*) Therefore, the ALJ assigned Dr. Freeman's opinion that Plaintiff could work 20 hours "no significant probative value." (*Id.*)

Plaintiff argues the ALJ "selectively relied" on portions of Drs. Talarico's and Freeman's opinions. (Dkt. No. 10 at 10-11 [Pl.'s Mem. of Law].) Plaintiff argues the ALJ erred because he failed to make reference to Dr. Freeman's opinion that Plaintiff would be absent from work approximately two time per month. (*Id.* at 10.) Plaintiff also argues and the ALJ failed to discuss Dr. Talarico's opinion that Plaintiff would be "off task" between 30-50% of the workday. (*Id.*)[5]

Failure to cite, or discuss, specific evidence is not in and of itself grounds for remand. The ALJ was not required to mention or discuss every single piece of evidence in the record. *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983); *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir.1982). Where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain]

---

[5] Plaintiff repeats this argument elsewhere in her brief, arguing the ALJ failed to address Dr. Talarico's opinion that Plaintiff would be off task and Dr. Freeman's opinion that Plaintiff would be absent two days a month. (Dkt. No. 10 at 16 [Pl.'s Mem. of Law].)

why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur,* 722 F.2d at 1040. Moreover, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) (citing *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir.2000)). Here, the ALJ's decision contained sufficient reference to all medical sources such that the Court could readily glean from the record the ALJ's rational.

The ALJ implicitly rejected Dr. Talarico's opinion that Plaintiff would be "off task" in his decision. First, the ALJ provided Dr. Talarico's opinion controlling weight, yet did not incorporate the "off task" limitation in his RFC determination, thus implying he did not adopt this portion of Dr. Talarico's opinion. (T. 46.) Second, the ALJ's discussion of his overall mental RFC determination included a thorough analysis of Plaintiff's ability to maintain attention and concentration and the ALJ sufficiently outlined his reasoning for his mental RFC limitations. (T. 41-42, 43.)

In his step three analysis, the ALJ concluded Plaintiff had "moderate" difficulties in concentration, persistence, and pace. (T. 41.) In making his determination, the ALJ relied on Dr. Talarico's April 2012 statement in which he opined Plaintiff had a moderately limited ability to sustain concentration. (*Id.*) The ALJ also relied on the opinion of consultative examiner, Sarah Long, Ph.D., who determined Plaintiff was able to understand and execute simple tasks, maintain concentration, follow a schedule and learn new tasks. (*Id.*) The ALJ also relied on Plaintiff's testimony indicating she could

care for her children, manage her finances, but that she sometimes gets distracted and forgets what she's doing. (T. 42.)[6]

In his mental RFC determination, the ALJ concluded Plaintiff had the ability to understand and execute simple job instructions, maintain attention and concentration for simple tasks, interact appropriately with others, make normal work adaptations, and maintain attendance and a work schedule within acceptable norms. (T. 43.) In making his mental RFC determination the ALJ relied on the opinion of consultative examiner, Dr. Long as outlined above. (*Id.*)[7] The ALJ also relied on the opinion of Dr. Talarico; specifically, his April 2012 statement that Plaintiff's only limitations were "moderate" limitations in maintaining attention and concentration, and his November 2012 notation that Plaintiff had made considerable progress in treatment. (*Id.*) The ALJ also relied on Dr. Freeman's October 2012 report at which time he observed Plaintiff had normal insight, judgment, attention, and concentration. (*Id.*) Therefore, the ALJ thoroughly discussed the medical evidence in the record in making a mental RFC determination. Although the ALJ did not specifically mention Dr. Talarico's limitation that Plaintiff would be "off task" 30-50% of the workday, a reading of the ALJ's decision provided ample evidence and reasoning to ensure this Court that the ALJ's mental RFC determination was supported by substantial evidence.

---

[6] Of note, a step three analysis is not an RFC analysis, an RFC analysis requires a more detailed analysis. However, the ALJ's discussion of medical evidence at step three provides insight into the ALJ's overall analysis and determination that Plaintiff's mental impairments did not render her disabled.

[7] An ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," particularly where the consultant's opinion is supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010).

Plaintiff further argues the ALJ erred because he made "no reference" to Dr. Freeman's opinion that Plaintiff would be absent from work approximately two days per month. (Dkt. No. 10 at 10, 16 [Pl.'s Mem. of Law].) As state herein, the ALJ was not required to mention or discuss every single piece of evidence in the record. *Mongeur,* 722 F.2d at 1040; *Berry,* 675 F.2d at 469. Again, although the ALJ did not specifically mention or discuss this particular piece of Dr. Freeman's opinion, the ALJ's overall discuss of the medical evidence in the record, including his discussion of Dr. Freeman's opinion, provided sufficient evidence of the ALJ's reasoning in rejecting that portion of Dr. Freeman's opinion. The ALJ's overall discussion and analysis also provided substantial evidence to support the ALJ's RFC determination.

Plaintiff argues the case at bar is similar to *Kochanek v. Astrue*, No. 08-CV-310, 2010 WL 1705290 (N.D.N.Y. April 13, 2010). Although the ALJ in *Kochanek*, similar to the ALJ here, failed to specifically address the treating physician's opinion that plaintiff would miss two days per month, the Court in *Kochanek* remanded because the ALJ's treatment of the treating physician's opinion was so poor "it [was] not clear that the ALJ was cognizant of his obligation to apply the treating physician rule." *Kochanek*, 2010 WL 1705290, at *9. Here, it is apparent from the ALJ's decision that he not only was cognizant of the treating physician rule, but also that he properly applied it in assessing the medical opinions in the record.

The ALJ concluded Dr. Freeman's opinion that Plaintiff was only capable of working 20 hours a week and experienced distracting pain was inconsistent with medical evidence in the record. (T. 46.) In affording weight to Dr. Freeman's opinion, the ALJ specifically relied on normal physical examinations and objective medical

testing results. (*Id.*) In making his physical RFC determination, the ALJ relied on the medical opinion evidence of consultative examiner, Pranab Datta, M.D.; objective medical findings by neurologist, Taseer Minhas, M.D.; and, physical examinations by Jocelyn Wittsetin, M.D. and Gregory Cummings, M.D. (T. 39, 46.) Therefore, the ALJ did not err in failing to mention or discuss Dr. Freeman's opinion that Plaintiff would be absent two days a month because the ALJ's decision provided an accurate and thorough discussion of the medical evidence in the record, such that this Court could readily discern the ALJ's reasoning and analysis. Further, substantial evidence supported the ALJ's physical RFC determination.

Plaintiff next argues the ALJ should have re-contacted Dr. Freeman because the ALJ found his statements internally inconsistent. (Dkt. No. 10 at 17 [Pl.'s Mem. of Law].) The ALJ is under an affirmative duty to "make every reasonable effort" to develop the record. 20 C.F.R. §§ 404.1512(d) and 416.912(d). Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician, including an assessment of the claimant's functional capacity, in order to afford the claimant a full and fair hearing. *See Smith v. Astrue*, 896 F. Supp. 2d. 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512(e); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002) (collecting cases); *Hardhardt v. Astrue*, No. 05–CV–2229, 2008 WL 2244995, at *9 (E.D.N.Y. May 29, 2008)).

However, the ALJ has no duty to re-contact a source where the evidence submitted by that source is complete. Where the source's opinion includes all of the factors set forth in 20 C.F.R. §§ 404.1513 and 416.913,[8] and there is no indication that

---

[8] Pursuant to 20 C.F.R. §§ 404.1513(b) and 416.913(b), medical reports should include a patient's (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment

further contact will result in additional information, re-contact is not necessary. *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009). Here, Dr. Freeman provided treatment notes and a medical source statement, therefore, the record was complete and the ALJ had no duty to re-contact. Further, for the reasons stated herein, the ALJ's conclusion regarding Dr. Freeman's opinions was clear from the record and supported by substantial evidence. Therefore, remand is not recommended.

### B. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

---

prescribed with response and prognosis, and a (6) statement about what the patient can still do despite his or her impairments based on the findings set forth in factors (1) through (5).

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ concluded Plaintiff's testimony regarding the intensity, persistence and limiting effects of her symptoms was not entirely credible. (T. 45.) In making his credibility determination the ALJ outlined the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 96-4p. (*Id.*) The ALJ then provided a thorough synopsis of Plaintiff's testimony, objective medical evidence in the record, and Plaintiff's activities of daily living. (*Id.*)

Plaintiff argues the ALJ erred in his analysis of objective medical evidence. (Dkt. No. 10 at 11-12 [Pl.'s Mem. of Law].) Plaintiff also argues the ALJ erred in his assessment of Plaintiff's activities of daily living, failed to discuss each factor outlined in

the Regulations, and "ignored" evidence that would bolster Plaintiff's credibility. (*Id.* at 13-14.)

Plaintiff relies on case law in support of her argument that the ALJ's analysis of objective medical evidence, specifically muscle spasm, was improper. (Dkt. No. 10 at 12 [Pl.'s Mem. of Law].) Plaintiff asserts that muscle spasm, such as the ones noted by Plaintiff's treatment providers, constituted objective evidence which supported Plaintiff's testimony regarding her symptoms. (*Id.*) Plaintiff relies on *Grimshaw v. Comm'r of Soc. Sec.*, No. 8:06-CV-628 (GJD), 2009 WL 2922317, at *5 (N.D.N.Y. Sept. 8, 2009) which reasoned "spasms" are considered objective evidence under 20 C.F.R. § 404.1529(c)(2). (*Id.*) However, although muscle spasms are considered objective medical evidence under the Regulations, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

Here, in his credibility analysis, the ALJ cited objective medical evidence in the record which supported his conclusion that Plaintiff's allegations were not credible. Although Plaintiff provides evidence from the record which could support her position, the evidence was not such that no reasonable factfinder could have reached the ALJ's conclusion. Therefore, the ALJ did not err in his evaluation of the objective medical evidence in the context of his credibility assessment.

Plaintiff further argues the ALJ failed to follow the Regulations in making a credibility determination. (Dkt. No. 10 at 13-15 [Pl.'s Mem. of Law].) Plaintiff argues the ALJ failed to "really engage in any meaningful analysis" in his credibility determination. (*Id.* at 13.) Plaintiff's argument is without merit. In his credibility analysis the ALJ outlined the Regulations and specific factors required in making a credibility analysis, thus indicating the ALJ was aware of the factors. (T. 44.) The Second Circuit does not require a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Halloran v. Barnhart,* 362 F.3d 28, 31–32 (2d Cir.2004). The ALJ's credibility analysis provided a thorough discussion of Plaintiff's testimony, her activities of daily living, objective medical evidence (including testing and examinations), and Plaintiff's medications (including side effects). The ALJ's decision clearly indicated he adhered to the factors in the Regulations. For the reasons stated herein, the ALJ's credibility analysis was thorough, complete, and in accordance with the Regulations and remand is not recommended.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:	March 7, 2016

/s/ Bill Carter
William B. Mitchell Carter
U.S. Magistrate Judge